William D. Hyslop
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JAMES PHILLIP MONAGHAN, III, Defendant. | Case No. 2:19CR00206-WFN-1 United States' Sentencing Memorandum and Response to Defendant's Objections |

The Plaintiff, the United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Assistant United States Attorney Richard R. Barker, submits the following sentencing memorandum. For the reasons set forth below, and consistent with the parties' Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, the United States respectfully asks the Court to sentence the Defendant, James Phillip Monaghan, III, to forty months' imprisonment followed by ten years' supervised release.

**STATEMENT OF FACTS**

As set forth in the Presentence Investigation Report, ECF No. 44, and related discovery in this case, on or about November 2, 2019, Defendant sexually assaulted Minor 1, who was sixteen years old at the time, while Minor 1 was incapacitated and unable to consent. Specifically, Defendant approached Minor 1 while she was asleep,

United States' Sentencing Memorandum – 1

removed her clothes and penetrated Minor 1's vagina with his penis. ECF No. 44 at ¶¶ 8-16.

According to Defendant's own account of the assault, he was at a friend's trailer in Nespelem, Washington on the evening of November 2, 2019. While there, Defendant heard other voices from inside the trailer, including that of Minor 1. Defendant then walked from a back room in the trailer into the kitchen to get a drink. On the way, he passed by the middle room where he saw Minor 1, laying on the bed. After grabbing the drink from the kitchen, Defendant entered the room where Minor 1 was asleep, began kissing her face, and started touching Minor 1's vagina under her sweatpants. Minor 1 was unable to resist because she had been drinking that evening and had fallen asleep. She was unconsciousness, but this did not deter the Defendant. *See id.* at ¶ 10.

While Defendant was engaging in sexual contact with Minor 1, a friend of Minor 1 walked into the room and saw Defendant touching Minor 1's vagina. At this point, Defendant was told to leave the trailer, which he did. Although Defendant exited the trailer, he hid next to one of the cars in the yard, as another car was pulling up. Even though Defendant was kicked out of the trailer, he was not still was not deterred. *See id.*

A few minutes after the car pulled up, Defendant went back inside through the front door. Defendant then proceeded to remove Minor 1's pants without her consent. He also removed all of his own clothing and began having vaginal intercourse with Minor 1. Even though Minor 1 was asleep, Defendant was not deterred. He vaginally raped his sleeping victim. *See id.* at ¶11.

Less than five minutes after Defendant vaginally penetrated his victim, Minor 1's friend again walked into the bedroom and saw Defendant having sexual intercourse with Minor 1, who was asleep. The friend yelled, "You're raping her. She's only 16 and you're 22, that's not right!" The friend again told Defendant to

United States' Sentencing Memorandum – 2

leave. Defendant, still undeterred, initially ignored the friend and continued having unconsented vaginal intercourse with Minor 1. He continued for a short time, until he ejaculated.

Finally, Defendant got dressed. At this point, the friend began throwing things at Defendant. The friend also grabbed a baseball bat and chased Defendant out of the trailer. Only then did Defendant leave, after sexually assaulting Minor 1 – affecting her life forever. *See id.* at ¶11.

Defendant reported the offense the next day. If he had not done so, it is possible that law enforcement may not have been able to effectively prosecute this case. Minor 1 did not have any memory of what happened and did not report the assault. When law enforcement found her (i.e., after Defendant confessed to the crime), Minor 1 explained that she remembered only being intoxicated and feeling pain in her vaginal area the next morning. Minor 1 could not remember any details of the rape, and there was no forensic evidence – likely because Minor 1 showered the morning after the assault. *Id.* at ¶13.

Notwithstanding that Minor 1 had no recollection of the offense, one of her friends witnessed the assault and corroborated Defendant's confession. This friend, however, did not report the assault herself. Rather, she was identified as a result of Defendant's confession. Notably, the friend initially indicated that she did not want to cooperate with law enforcement. *See id.* at ¶14.

**RESPONSE TO DEFENSE OBJECTIONS**

In response to the draft PSIR, Defendant lodged objections to two enhancements identified in the PSIR: (1) application of the vulnerable victim enhancement pursuant to USSG §3A1.1(b)(1); and (2) application of the repeat and dangerous offender enhancement pursuant to USSG § 4B1.5(b)(1). The United States' position on these enhancements is set forth below:

United States' Sentencing Memorandum – 3

*(1) Vulnerable Victim Enhancement*

Under USSG §3A1.1(b)(1), a defendant is subject to a 2-level upward adjustment when a Defendant knew, or should have known, that the victim of the offense was a vulnerable victim.  The comments to this guideline specify that this enhancement applies to offenses involving an "unusual vulnerability," but only if that vulnerability is not already incorporated into the offense guideline:

> Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. . . .
>
> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

USSG §3A1.1(b)(1), note 2.

Defendant's position is that the offense guideline, USSG § 2A3.1(a)(2) takes into account the victim's vulnerability – i.e., the victim's intoxication to the point of unconsciousness.  *See* ECF No. 45 at 2.  Though the United States agrees that the offense of conviction, 18 U.S.C. § 2242(2), takes into account the victim's incapacity, it is less clear that the offense guideline takes her intoxication into account.

At least one Circuit court to address the vulnerable victim adjustment in the context § 2242(2) prosecutions has applied the adjustment on facts similar to those at issue here.  *See United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011) (upholding a vulnerable victim enhancement on a § 2242(2) conviction where the victim "passed out" from intoxication).  Although counsel for the United States is unaware of any

United States' Sentencing Memorandum – 4

published decision in the Ninth Circuit applying the adjustment in a 2242(2) case, the Ninth Circuit has applied the adjustment on facts similar to those at issue here, albeit in an unpublished decision. *See United States v. Crudden*, 76 F.3d 389, 1996 WL 19195 (9th Cir. 1995). In *Crudden*, the Ninth Circuit explained:

> The district court properly found that the defendant was aware of the victim's unusual vulnerability because she was intoxicated and sleeping at the time of the sexual abuse. The victim's mental and physical condition prevented her from resisting the abuse. Therefore, the district court was correct in applying the vulnerable victim adjustment to the defendant's sentence.

*Id.* Notably, *Crudden* was decided in the context of a violation of 18 U.S.C. § 2243(a) (statutory rape), and not §2242(2) (sexual abuse of a minor). This distinction could be relevant to the Court's determination given that the offense guideline for prosecutions under § 2243(a) differs from the offense guideline for prosecutions pursuant to § 2242(2). *Compare* USSG § 2A3.2 (Criminal Sexual Abuse of a Minor under the Age of Sixteen Years (Statutory Rape)) *with* USSG § 2A3.1 (Criminal Sexual Abuse).

  *(2) Repeat and Dangerous Offender Adjustment*

USSG § 4B1.5 provides for a five-point upward adjustment where the prohibited sexual conduct occurred on at least two separate occasions with the minor victim. Specifically, note 4(B)(i) to USSG §4B1.5 instructs that the "pattern" required for application of the enhancement is established "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." The word "separate" is not defined, which would be of no consequence, except in a unique case such as this one.

United States' Sentencing Memorandum – 5

This case involves one minor victim who was sexually assaulted by the Defendant over the course of approximately one hour, if not less. The minor victim has no recollection of the assault, including the number of times she was assaulted. Defendant described touching the victim's vagina under her clothing before being told to leave by Minor 1's friend. Shortly thereafter, Defendant returned and vaginally penetrated the victim.

The commentary to U.S.S.G. § 4B1.5(b)(1) details an "occasion" on which the defendant engaged in prohibited conduct can be considered for purposes of § 4B1.5(b)(1) "without regard to whether the occasion . . . occurred during the course of the instant offense." *See* U.S.S.G. § 4B1.5 cmt. n. 4(B)(ii)(I). The Guideline does suggest that each "occasion" need not be with a different minor. In fact, the April 30, 2003 amendment to the guideline changed "two minor victims" to read "a minor." *See* U.S.S.G. § 4B1.5, comment. (n.4(B)(i)) (Nov. 2002).

The remaining issue is whether or not "two occasions" can be found from two acts of penetration, even if they occur very close in time, within approximately one hour or less, with the same victim. The government has not identified any controlling authority directly on point; however, as set forth in Defendant's Sentencing Memorandum, Judge Rice recently declined to apply the §4B1.5 enhancement on somewhat similar facts, where a defendant sexually assaulted his victim two times during a single day. *See United States v. Flett*, 2:18-CR-00231-TOR. In addition, the government would note that the Guideline is intended to identify "repeat sex offenders," who pose "a continuing danger to the public." *See* U.S.S.G. § 4B1.5 cmt. Background.

### SENTENCING CALCULATIONS

The government agrees with the United States Probation Office that Defendant's criminal history category is I. *See* ECF No. 44 at ¶98. The United States also agrees that while the Defendant may be sentenced up to lifetime of supervised

United States' Sentencing Memorandum – 6

release, his guideline for supervised release is five years. *Id.* In the event that the Court agrees with U.S. Probation's calculations, Defendant's total offense level is 34, resulting in an advisory guidelines range of 151 months – 188 months incarceration. *See id.*

To the extent that the Court declines to apply a five-point upward adjustment pursuant to USSG §4B1.5(b)(1) (Repeat and Dangerous Offender), Defendant's total offense level would be 29, resulting in an advisory guidelines range of 87 – 108 months. Whatever his range, the Court may also take into account the measure of Defendant's acceptance of responsibility and/or his diminished mental health capacity, which currently are not factored into the advisory guideline range calculated by U.S. Probation. *See* USSG §§ 5K2.13 and 5K2.16.

Based on these calculations and the totality of the record in this unique case, the government stands by the plea agreement pursuant to Rule 11(c)(1)(C), and recommends a sentence of 40 months imprisonment, followed by a 10 year period of supervised release.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In determining the appropriate sentence, the Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's egregious sexual assault of Minor 1, a sixteen-year-old child. Although Minor 1 does not have a specific memory of the assault, she is well aware of what happened, and she will continue to suffer from the effects of being sexually assaulted in her youth. Her community, which is a small one, is also aware of the assault, given that members of the community posted on Facebook about Defendant's conduct, albeit without referencing Minor 1 by name.

United States' Sentencing Memorandum – 7

Defendant's history and characteristics are concerning. While Defendant has no prior criminal history, his mental health and traumatic brain injury appear to have contributed to this offense – creating an impulsivity and failure to appreciate the consequences of his actions – consequences not only for Defendant, but consequences for Minor 1. In this regard, Defendant's mental health is a two-edged sword – it arguably is a basis for lenity (consistent with Defendant's motion for a downward departure pursuant to §5K2.13), but is also may give the Court significant pause given the risk that Defendant's impulsivity may lead him to reoffend. A forty-month sentence strikes the appropriate balance – taking into account the egregious nature of the offense and the risk of recidivism, measured against the evidence that Defendant's brain injury factored into the offense.

> 2. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment

Both the government and the defense recognize the seriousness of Defendant's crime. Indeed, if the Court were to consider the offense itself – i.e., without taking into account Defendant's mental health history and the circumstances of his confession – the United States would zealously seek a sentence within the applicable guidelines range. This is so because Defendant had every opportunity to walk away. He could have passed by Minor 1 when he saw her passed out, but did not. He could have left after he realized she was asleep and intoxicated; he stayed. Defendant could have left after the friend first saw Defendant raping the victim and told him to go, but Defendant came back. These circumstances are extremely serious.

To his credit, however, Defendant, confessed of his crime the next day. While his confession may not have been motivated *entirely* by guilt, remorse, or a desire to do the right thing – i.e., because members of the community had posted about the assault on Facebook – this case may never have been prosecuted but for Defendant's confession. As set forth above, Defendant identified his victim and the material

United States' Sentencing Memorandum – 8

eyewitness. While he had no way of knowing it at the time, there would be no DNA evidence linking Defendant to the crime.

Ultimately, Defendant must be sentenced for the offense conduct, which was abhorrent in this case. That said, Defendant's acceptance of responsibility is commendable and should be taken into account in crafting his sentence under 18 U.S.C. § 3553(a) and USSG §5K2.16 (extraordinary acceptance of responsibility). Again, the United States may not have been able to meet its burden in this unique case but for Defendant's repeated efforts to turn himself in and give a full confession.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of Defendant</u>

The government asserts that a forty-month term of imprisonment is adequate but not greater than necessary to deter further criminal misconduct, provided this sentence is accompanied by ten years' supervised release. The sentence itself is approximately half of the advisory guidelines range (assuming the Court does not apply the adjustment under §4B1.5(b)(1)), but the period of supervised release is double the advisory guideline range for supervised release. This extended period of supervised release is necessary to ensure that Defendant's conduct and impulsivity is carefully monitored following release from custody.

Ultimately, Defendant was undeterred by the fact that Minor 1 was sleeping when he assaulted her. He was undeterred by the fact that she was only 16 years old. Defendant was undeterred by the fact that Minor 1's friend told him to leave. A forty-month sentence is necessary to deter further misconduct.

4. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

Defendant reported that he has graduated from high school in 2016. *See* ECF No. 44 at ¶66. To the extent applicable, additional educational or vocational opportunities may available while he is in the custody of the Federal Bureau of

United States' Sentencing Memorandum – 9

Prisons. These would appear to be beneficial to him and provide increased opportunities upon his release. Substance abuse treatment should also be considered, given his history of using alcohol and other controlled substances. *See* ECF No. 44 at ¶¶ 60-65.

> 5. The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is for courts to apply the Guidelines in the same manner everywhere. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). The Guidelines generally are the only normative way to accomplish that.

In this case, a sentence of forty months' imprisonment properly balances "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This sentence takes into account the totality of Defendant's conduct, which was very serious as well as the unique history and circumstances of this case.

> 6. Basis for Upward Departure and/or Variance

The government respectfully submits, consistent with the parties' Rule 11(c)(1)(C) plea agreement, that the 3553(a) factors relating to Defendant's offense and history are not adequately captured by the advisory guidelines sentence. As reflected by the initial guidelines calculations in the draft PSIR, it is a close call whether certain enhancements apply. *See* ECF No. 44. There may also be bases for a departure and/or variance pursuant to USSG §§ 5K2.13 and 5K2.16. The parties accounted for all of these considerations in their Rule 11(c)(1)(C) plea agreement, which balances the totality of Defendant's history and characteristics with the seriousness of the his crime against Minor 1.

United States' Sentencing Memorandum – 10

**SENTENCING RECOMMENDATION**

The Government reiterates its recommendation that the Court accept the Rule 11(c)(1)(C) plea agreement and sentence Defendant to forty months' imprisonment followed by ten years' supervised release. Such a sentence adequately captures the nature and severity of Defendant's offense conduct, as well as his criminal history, and relatively unique acceptance of responsibility.

Respectfully submitted this 17th day of February 2021.

                                        William D. Hyslop
                                      United States Attorney

                                      *s/ Richard R. Barker*
                                      Richard R. Barker
                                      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Andrea George
Federal Defenders of Eastern Washington and Idaho
10 North Post Street, Suite 700
Spokane, WA 99201.

                                  *s/ Richard R. Barker*
                                  Richard R. Barker
                                  Assistant United States Attorney